STEEL FURNITURE CO. *v.* PEARCE.

1. TRIAL—OPENING STATEMENT—CONTRACTS—ACCEPTANCE—REJECTION.

In an action on a written contract for the sale of certain seats, defended on the ground that they were not the ones ordered by catalog number, and were not like those shown defendants in another theater, which plaintiff's agent represented they would be like, defendants' counsel had the right, in making his opening statement, to state his claim on the law as well as on the facts.

2. SAME—DIRECTED VERDICT—ESTOPPEL—PROOFS.

Where counsel stated in his opening that the seats were received and put up, but claimed the evidence would show that they were rejected within a reasonable time, defendants were not estopped from making their proofs, and the court below was in error in directing a verdict for plaintiff without receiving defendants' evidence, since the question as to whether the seats were rejected within a reasonable time might become one of law for the court, one of fact for the jury, or a mixed question of law and fact, according as the proofs might show. OSTRANDER, C. J., and BROOKE, J., dissenting.

Error to Wayne; Barton, J., presiding. Submitted October 9, 1918. (Docket No. 23.) Decided December 27, 1918.

Assumpsit by the Steel Furniture Company against George W. Pearce and another, copartners as Pearce Brothers, for goods sold and delivered. Judgment for plaintiff on a directed verdict. Defendants bring error. Reversed.

*Woodruff & Woodruff* and *Frank W. Atkinson,* for appellants.

*Welsh, Rebout & Kahn,* for appellee.

OSTRANDER, C. J. (*dissenting*). Suit was begun No-

vember 24, 1916. Plaintiff declared upon the common counts in assumpsit. Its bill of particulars is:

"1915. Sept. 17th—Purchase price of 538 No. 155 Bch. Ven. Mahogany fin. chairs at $1.19 each, $640.22. According to contract, interest 5 per cent."

Defendants pleaded the general issue with notice of the special defenses that in negotiating for the chairs they were shown a catalog representing No. 155, asked to see a sample chair, were taken to another theater where chairs were being installed and told that they were the same style as said No. 155, and, relying upon the representation, gave their order for the chairs, entering into a written contract therefor; that the chairs furnished to defendants are not the style and make shown in the catalog or in the other theater, are not suitable for the theater business, being lower and of inferior grade, with unfinished corners, and that patrons who used them complained because dresses were torn and injuries received on account of the sharp corners; that they were obliged to remove the chairs and substitute others; that the agent of plaintiff was notified to remove the chairs and the plaintiff notified that it had failed to supply the chairs as represented by its agent and made no reply for months.

The case coming on to be tried, the attorney for the plaintiff stated that the plaintiff would prove that the chairs were sold as stated in the written contract, were style No. 155 shown in a certain catalog at the time of the sale, were shipped according to contract, received by defendants, by them placed in their theater and used by them; that defendants at no time refused to accept them, but did accept them and had them in their possession and had not paid for them. Thereupon the attorney for defendants stated, among other things, that—

"The evidence will show, gentlemen of the jury,

that he had a catalog with him, and talked or at least, pointed out to the Pearce Brothers the style and make of the seat that was sold, or that the Steel Furniture Company would deliver to the Pearce Brothers; that they asked him why he didn't produce a sample so they could look at it.

"The evidence will show the agent said it was a little expense to carry around, but he would take them up to the Palace Theater in Detroit, where they had installed the same kind of seat that he was to sell the Pearce Brothers, which were manufactured by this company in Grand Rapids.

"The evidence will show, gentlemen of the jury, that after the Pearce Brothers went up to the Palace theater and looked over the seats, relying on the representations that were made by the agent of this company, that they came back to Wyandotte and signed up as Pearce Brothers for the number of seats alleged in this contract, at the price fixed.

"Now, gentlemen of the jury, the evidence will show that after the seats came they were put up; that they were not the seats described in the catalog that was produced by the agent, nor they were not anything like the seat that was exhibited to these men at the Palace Theater in Detroit; that the corners were such that when people came in to sit down on them they would tear their clothes; that finally they were compelled to take the seats out themselves; and the evidence will show that the defendants did take the seats out themselves. We will show you that within a reasonable time after the seats were delivered they notified them to take them away because they were not the seats ordered; that they informed the agent who sold those seats, and he kept telling them he would write to the company, as the evidence will show, for them to take care of the seats.

"Finally, gentlemen, he came over one day, and they had a talk about the seats, and he admitted, as the evidence will show, they were not seats like he had taken them to look at in Detroit. He said he had only received $9.00 for commission, and he would not bother any more to do anything about the seats.

"Now, the evidence will show that the defendants have been repeatedly notified to take their property

away, but have refused to take it away, and the seats were put together and put away; and they are now stored at the city of Wyandotte."

The attorney for plaintiff then asked the court to direct a verdict for the plaintiff. A colloquy followed, during which the contract was offered and received in evidence, and during which, referring to the statement of the attorney for defendants, the court, without being corrected, if mistaken, said:

"He conceded having received them, accepted them, and installing them."

In the course of the colloquy the attorney for defendants admitted that by the terms of the contract the purchase price of the chairs was due, and further stated:

"It seems to me under the decisions, your honor has not, until the testimony is in, and the circumstances surrounding the transaction, whether or not the seats correspond with the sample showed by the agent at the time the order was given, and before the order was actually entered into, are all matters that should be taken into consideration by your honor before you hold, as a matter of law, that there has been an estoppel.

"The question of estoppel cannot be decided until the testimony is before the court. Whether or not the seats delivered correspond to the sample from which the order was given; whether the defendants within a reasonable time notified the plaintiff to take them away, and all the facts and circumstances surrounding the whole transaction must be before the court before it can pass on the question of estoppel. The Supreme Court of this State has so decided. I have the citations here. When all the facts are before the court, it may become a question to be submitted to the jury or a question of law for the court, or a mixed question of fact and law for the court and jury.

"We admit that a contract was executed, and that seats were delivered. We deny that the seats delivered were the seats called for by the contract."

It was admitted also that the chairs were installed on Thanksgiving evening, in November, 1915. No testimony was offered or was received other than the written contract. The court directed a verdict for plaintiff, upon which judgment was entered. It is assigned as error (1) that the verdict was so directed, (2) that the court refused to receive testimony for defendants, (3) that the court decided the question of estoppel without hearing evidence.

An examination of the contract discloses that it is an order for chairs, the number to be according to a seating plan, "about 550 chairs," style No. 155. Color of wood, of metal standards, etc., are given. Setting up directions were to be sent to defendants. It contains the provisions that—

"Verbal promises or statements are not binding upon us, and this is made an express understanding of this agreement,"

—and the order was given "subject to your approval."

In considering whether a sale of personal property is completed, there is, of course, a distinction to be made between delivery of the property sold and acceptance of it by the buyer. The buyer is entitled, in cases like the one at bar, to a reasonable time to inspect the property delivered and to reject it if the seller has not delivered the goods ordered. Patent defects and variations from the agreed upon standard when goods are sold may be waived, and are waived if, after reasonable time for inspection, the goods are not rejected.

Circuit Court Rule No. 42 requires the attorney for defendant to make a full and fair statement of his case and of the facts which he expects to prove. The rule is a salutary one, upon the observance of which the trial court may, in most cases, rely. In this case, it is not claimed that by mistake or inadvertence counsel for defendants omitted to state any fact relied

upon. It appears from the evidence and from the statement of defendants' counsel, assuming that the material statements might have been proven, *first,* that the defendants ordered certain chairs to be shipped to them, described by a number. The order sent in for the approval of plaintiff contained no other specification as to style of the chairs and expressly recited that verbal promises or statements were not binding. Chairs were shipped and received. They were not the chairs described (were not style No. 155). Nevertheless, they were installed by defendants in their theater and put to use there. Some time thereafter, but at what time does not appear, the plaintiff was notified to take them away because they were not the seats ordered. Their use demonstrated that clothing was torn on them and they were *finally* removed by defendants. Testimony to this effect would tend to prove acceptance of the chairs. No reason is given, and none is apparent, for not refusing the chairs upon delivery, and, while counsel stated that within a reasonable time plaintiff was notified that they were not the seats ordered and to take them away, that is not a statement of fact, but or a conclusion. Defendants are here alleging error of law and asking for a new trial of the case, and yet the court below was not advised, nor is this court advised, that defendants can produce any testimony excusing them for installing and using these chairs, or any which will tend to prove their rejection within a reasonable time *because they were not the chairs ordered.* Under these circumstances, error is not made to appear.

The judgment should be affirmed.

BROOKE, J., concurred with OSTRANDER, C. J.

FELLOWS, J. I do not agree that the trial court correctly refused to receive any testimony and correctly

directed a verdict for the plaintiff. Defendants' counsel, as will be seen by statement of facts, stated:

"We will show you that within a reasonable time after the seats were delivered they notified them to take them away because they were not the seats ordered; that they informed the agent who sold those seats, and he kept telling them he would write to the company, as the evidence will show, for them to take care of the seats."

There was no objection made by plaintiff's counsel that the opening statement was not sufficiently definite upon the question of a reasonable time for inspection.
The objection being:

"This is a written contract, and even taking the statement of counsel as true, it is no defense to this action. It cannot vary the terms of this contract. They have admitted the contract, and the amount due, and I think, accordingly, all that is left for the court to do is to direct a verdict for the amount. I don't think they can put in evidence to show those facts stated by counsel for the defendant."

The defense that the chairs shipped were not the chairs ordered did not change or vary the terms of the written contract. Had plaintiff's counsel objected to receiving any evidence because the date of the receipt of the shipment and the date of the rejection were not given, it is highly probable defendants' counsel would have supplied the dates; at least he would have had opportunity so to do. The fact that the chairs were placed does not in my judgment conclusively establish as matter of law that they were accepted. It is possible that it was necessary to place them in position in order to determine whether they were the chairs ordered, were like those defendants saw placed in position at the Palace theater.

Defendants' counsel had the right, in making his opening statement, to state his claim on the law as well as on the facts. *People* v. *Smith*, 177 Mich. 358,

and authorities there cited.  In the case of *Marvin* v. *Hartz*, 130 Mich. 26, this court reversed a case brought to recover possession of land under the summary proceeding act where the complainant's counsel in his opening statement and argument referred to the proceeding as being under the forcible detainer act, and where the testimony did not justify recovery under the latter act.  It was held that the plaintiff was not estopped by reason of this statement of counsel from claiming in this court that the proceedings were not under the forcible detainer act, but were under the summary proceeding act.  In the instant case there is no question as to the sufficiency of the notice given under the plea of the general issue.  I think the defendants were not estopped from making their proofs. When the proofs were in, the question of whether they had rejected within the reasonable time they had for inspection, might become a question of law for the court, a question of fact for the jury or a mixed question of law and fact.  I think the defendants are entitled to a trial of the case in the court below and a reversal here, with costs of this court.

BIRD, MOORE, STEERE, STONE, and KUHN, JJ., concurred with FELLOWS, J.